**David RICE, Plaintiff-Appellant,**

v.

**Kanu PANCHAL, M.D., Rodrigo Sotillo, M.D., Rodrigo Sotillo, P.C., a corporation, et al., Defendants-Appellees.**

No. 95-1206.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1995.

Decided Sept. 12, 1995.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Nov. 6, 1995.

Harry C. Lee, Chicago, IL, Susan E. Loggans, James Kaese (argued), Chicago, IL, for David Rice.

David F. Schmidt (argued), Joseph J. Hasman, Peterson & Ross, Chicago, IL, for Prudential Health Care Plan, Inc.

Marc I. Machiz, Thomas S. Williamson, Jr., Karen L. Handorf, G. William Scott (argued), Department of Labor, Office of Solicitor, Washington, DC, for Robert B. Reich, amicus curiae.

David E. Manoogian, Juliane C. Miller, Epstein, Becker & Green, Washington, DC, for American Managed Care and Review Ass'n, amicus curiae.

Before COFFEY, FLAUM, and MANION, Circuit Judges.

MANION, Circuit Judge.

David Rice ("Rice") filed a medical malpractice complaint in the circuit court for Cook County, Illinois against Doctors Kanu Panchal (Panchal) and Rodrigo Sotillo (Sotillo) for injuries he received as a result of their allegedly negligent treatment. Rice had sought medical treatment under a welfare benefits plan that named Sotillo as a designated care provider, so Rice also sued the plan administrator, the Prudential Insurance Company of America ("Prudential"). Rice alleged that Prudential was liable for the medical malpractice of Sotillo under the state law theory of respondeat superior. Prudential removed the complaint to federal court under the doctrine of complete preemption, and later, the district court dismissed Rice's complaint against Prudential on the grounds that he had no remedy under ERISA. Rice appeals, alleging that there was no federal jurisdiction because his state law claim was not subject to complete preemption under ERISA. For the reasons given below, we reverse the district court.

## I. Background

Handy Andy, Inc. ("Handy Andy") provides its employees with welfare benefits pursuant to an ERISA welfare benefits plan (the "Plan"). The Plan is a group insurance contract issued by Prudential. By its terms, the Plan pays specified portions of costs incurred to receive medical services from "Prudential Health Care Providers." The Plan provides for insurer administration. Prudential, the insurer, administers the Plan and is a named fiduciary with respect to medical benefits. Pursuant to its responsibilities under the Plan, Prudential disseminated a list of Prudential Health Care Providers; Sotillo was on that list.

David Rice is an employee of Handy Andy and a participant in the Plan. Initially, Rice received treatment from Sotillo. Later, Sotillo referred Rice to Panchal, who is not a Prudential Health Care Provider, and Rice was treated by Panchal. Rice became seriously handicapped and brought a medical malpractice action against Panchal and Sotil-

lo in the circuit court for Cook County, Illinois. In his complaint, Rice also alleged that Prudential was liable for the medical malpractice of Sotillo under the state law doctrine of respondeat superior. According to his complaint, Prudential owed Rice a duty to use reasonable care and breached that duty through Sotillo, its agent.

Prudential removed the case to the federal court, alleging federal question jurisdiction under ERISA's complete preemption provision, asserting that Rice's state law claim was preempted by ERISA. The district court agreed and dismissed Rice's claim against Prudential. On appeal, Rice argues that the district court did not have federal question jurisdiction because ERISA does not completely preempt claims against ERISA plan administrators premised on the state law doctrine of respondeat superior. The Secretary of Labor (the "Secretary") has appeared as *amicus curiae* to second Rice's cause.

## II. Analysis

This case requires us to explore the difference between "conflict preemption" under § 514(a), *see Ingersoll–Rand v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 486, 112 L.Ed.2d 474 (1990), and "complete preemption" under § 502(a), *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987), of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. But in order to understand the importance of this distinction it is necessary to begin with the principles governing the removal jurisdiction of federal courts under 28 U.S.C. § 1441. Under that section "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States...." 28 U.S.C. § 1441(b). Whether removal was proper in this case depends upon whether we have "federal question" jurisdiction under 28 U.S.C. § 1331, which gives federal courts jurisdiction over cases that "arise under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for "[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well pleaded complaint raise issues of federal law." *Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546. In contrast, "[t]he presence of a federal question ... in a *defensive argument* does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987) (emphasis supplied). Put another way, federal preemption that merely serves as a defense to a state law action (sometimes called "conflict preemption") does not confer federal question jurisdiction. *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9–12, 25–27, 103 S.Ct. 2841, 2846–48, 2854–55, 77 L.Ed.2d 420 (1983); *Lister v. Stark*, 890 F.2d 941, 943 & n. 1 (7th Cir.1989), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading.

The application of the complete preemption doctrine in the ERISA context originated in *Franchise Tax Board, supra*, where the Supreme Court observed that an action "that was not only preempted by ERISA but came within the scope of § 502(a)" might be subject to complete preemption. *Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. at 2854. Later, in *Taylor, supra*, the Court held that a plaintiff's common law claims were completely preempted by ERISA, because they were within the scope of § 502(a)(1)(B). *Taylor*, 481 U.S. at 64, 66, 107 S.Ct. at 1546–47, 1547–48. These cases establish that, under ERISA, § 502(a) provides the basis for complete preemption whereas § 514(a) pro-

vides the basis for conflict preemption.[1]

The difference between complete preemption under § 502(a) and conflict preemption under § 514(a) is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences. *Lister,* 890 F.2d at 943 & n. 1. If a state law claim has been "displaced," *see Taylor,* 481 U.S. at 60, 107 S.Ct. at 1544–45, and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly "recharacterized" as one arising under federal law. *Taylor,* 481 U.S. at 64, 107 S.Ct. at 1546–47; *Sofo v. Pan–American Life Ins. Co.,* 13 F.3d 239, 241 (7th Cir.1994); *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1075 (7th Cir.1992).[2] But state law claims that are merely subject to "conflict preemption" under § 514(a) are not recharacterized as claims arising under federal law; in such a situation, the federal law serves as a defense to the state law claim, and therefore, under the well-pleaded complaint rule the state law claims do not confer federal question jurisdiction. Thus, complete preemption under § 502(a) creates federal question jurisdiction whereas conflict preemption under § 514(a) does not. *See Lister,* 890 F.2d at 943 and n. 1. The difference in language between §§ 502(a) and 514(a) underscores the significant difference in the scope of the two sections. *See Harris v. Provident Life and Acc. and Ins. Co.,* 26 F.3d 930, 933–34 (9th Cir.1994); *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir. 1995); *Dukes v. U.S. Healthcare,* 57 F.3d 350, 355 (3d Cir.1995); *Lupo v. Human Affairs Intern., Inc.,* 28 F.3d 269, 273 (2d Cir. 1994). And if a claim is within the scope of § 502(a), then a participant's ability to recover damages is limited. *See Mass. Mut. Life*

*Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). In this case, we must determine whether Rice's effort to hold Prudential liable for the medical malpractice of Sotillo under state common law principles of respondeat superior is "within the scope of § 502(a)," *see Franchise Tax Board,* 463 U.S. at 24, 103 S.Ct. at 2854; *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1547–48, and therefore completely preempted under ERISA.

On appeal, both Rice and the Secretary argue that Rice's state law claim is not subject to complete preemption. The Secretary argues that Rice's claim is not within the scope of § 502(a) preemption because no provision of ERISA protects a plan participant's interest in being free from medical malpractice, and implicitly, the state law of vicarious liability that determines who is liable for that malpractice.[3] In part the Secretary's argument rests upon a use of the term "replace" (as opposed to "displace") that has been repeatedly rejected. For when the Secretary discusses § 502(a)'s preemptive force, he argues that it only replaces state law to the extent that it actually substitutes federal substantive law (and a federal cause of action) for a state law (and state cause of action).

That is clearly not the case. For example, in *Taylor, supra,* the Supreme Court held that the plaintiff's state common law contract *and tort claims* were preempted by § 502(a), even while noting that only the common law contract action to recover benefits fell directly under § 502(a). *Taylor,* 481 U.S. at 62–63, 107 S.Ct. at 1546. Likewise, the cases after *Taylor* have held that state common law

---

**1.** *See* Appendix to this opinion for text of §§ 502(a), 29 U.S.C. § 1132(a), and 514(a), 29 U.S.C. § 1144(a).

**2.** For this reason, the complete preemption doctrine is called a "corollary" to the well-pleaded complaint rule, *see Taylor,* 481 U.S. at 63, 107 S.Ct. at 1546; *Caterpillar v. Williams,* 482 U.S. at 393, 107 S.Ct. at 2430; to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly "recharacterized" as a complaint arising under federal law. *Taylor,*

481 U.S. at 64, 107 S.Ct. at 1546–47; *Bartholet,* 953 F.2d at 1075.

**3.** Although Rice and the Secretary repeatedly characterize Rice's claim against Prudential as one for medical malpractice, we think this case is really about the state law of vicarious liability. Prudential does not argue that ERISA preempts the state law of medical malpractice, it merely argues that the state law of vicarious liability cannot be used to hold an ERISA plan administrator liable for the medical malpractice of preferred care providers designated pursuant to an ERISA plan.

contract and tort claims are preempted by § 502(a), and have uniformly emphasized that § 502(a)'s preemptive force is modeled after § 301 of the Labor Management Relations Act which also *displaces,* but not necessarily *replaces,* state law. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–56, 107 S.Ct. 1549, 1555–57, 95 L.Ed.2d 39 (1987); *Ingersoll–Rand,* 498 U.S. at 144, 111 S.Ct. at 485. And this court has recognized that § 502(a) displaces state claims that it does not necessarily replace with federal claims. *Lister,* 890 F.2d at 946 ("The availability of a federal remedy is not a prerequisite for federal preemption"); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993) (same). Thus, we must reject the Secretary's assertion that Rice's claim is not completely preempted simply because ERISA contains no provision that can be used to hold a plan administrator vicariously liable for the medical malpractice of doctors providing services under the Plan. Rather, the question is whether Rice's claim against Prudential is within the scope of § 502(a), *see Taylor,* 481 U.S. at 64–65, 107 S.Ct. at 1547, and therefore completely preempted.

■ Although the precise boundaries of § 502(a)'s complete preemption are not clear, one prerequisite of complete preemption under § 502(a) is a plaintiff eligible to bring a claim under that section. Thus, in *Franchise Tax Board,* the Court held that § 502(a) did not completely preempt the State of California's effort to garnish ERISA plan benefits and obtain a declaratory judgment that ERISA provided no defense to the garnishment. The Court rejected this argument even as to the declaratory relief claim which it characterized as "within the class of questions for which Congress intended the federal courts to create a federal common law." *Franchise Tax Board,* 463 U.S. at 26, 103 S.Ct. at 2855. The overlapping (and least conclusory) rationale for its decision that § 502(a) did not completely preempt either state law action was that the State could not act as a plaintiff to bring suit under § 502(a). *Franchise Tax Board,* 463 U.S. at 26, 103 S.Ct. at 2855. In contrast, when the Court found the plaintiff's state common law contract and tort (emotional distress) claims preempted in *Taylor, supra,* it reasoned that

the legislative history of ERISA "consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction. . . ." *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1547; *see also Sofo,* 13 F.3d at 241 (plaintiff was plan participant such that wrongful rescission claim—effectively a claim for benefits under the plan—was completely preempted under § 502(a)); *cf. Harris,* 26 F.3d at 933–34 (plaintiff's contract and misrepresentation claims against ERISA plan administrator were not completely preempted because plaintiff was not a plan participant who could bring suit under § 502(a)). So it seems clear that the ability to bring suit under § 502(a) is an element of "complete preemption." And it is in this sense that we have observed "[p]reemption is what wipes out state law, but the foundation for removal is the creation of federal law to replace state law." *Bartholet,* 953 F.2d at 1075. For unless the federal law has created a federal remedy—no matter how limited—the federal law, of necessity, will only arise as a defense to a state law action.

■ *Taylor, supra,* shows that another element of complete preemption under § 502(a) is, of course, a claim within the subject matter of that section. In *Taylor,* the Court held that a plaintiff's common law contract and tort claims were completely preempted by § 502(a) because his claim for benefits was within the scope of § 502(a)(1)(B), which was the plaintiff's exclusive means of recovering benefits under an ERISA plan. *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1546–47. In *Pilot Life, supra,* the Court also examined the scope of § 502(a) when it held that the plaintiff's state law action for bad faith was not saved from preemption under § 514(b)(2)(A), because § 502(a), 29 U.S.C. § 1144(b)(2)(A), was the exclusive vehicle for asserting claims based on the improper processing of benefits. 481 U.S. at 52–56, 107 S.Ct. at 1555–57. Subsequently, the Court has indicated that there is complete preemption under § 502(a) whenever a plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a). *See Ingersoll–*

*Rand v. McClendon,* 498 U.S. at 142–45, 111 S.Ct. at 485–86 (state common law action for "wrongful-discharge-to-defeat-pension-benefits" was preempted under § 514(a) because it was premised on the existence of a plan, and also, because the state law action was displaced under § 510 as enforced via § 502(a)).[4]

■ This brings us to the issue in this case: we must determine whether Rice's effort to hold Prudential liable for the medical malpractice of Sotillo under state common law of respondeat superior is properly recharacterized as a suit within the scope of § 502(a) that is subject to complete preemption. *See Taylor,* 481 U.S. at 66, 107 S.Ct. at 1547–48 (common law contract and tort—emotional distress—claim); *Sofo,* 13 F.3d at 241 (wrongful rescission of contract); *Lupo,* 28 F.3d at 272–73 (negligent hiring and supervision); *Warner,* 46 F.3d at 534 (age discrimination); *Dukes,* 57 F.3d at 352–53 (agency). On its face, Rice's claim that Prudential is liable for the medical malpractice of Sotillo does not rest on the terms of Handy Andy's ERISA plan. For starters, Rice does not claim that he did not receive the benefits due to him under the Plan, which are payments of the costs of medical services, not the medical services themselves. He does not claim that the Plan guarantees that Prudential Health Care Providers would provide malpractice-free medical care or that the Plan provides coverage for injuries caused by medical malpractice. Nor does Rice claim that Prudential was negligent when it selected Sotillo to be a Prudential Health Care Provider and held Sotillo out as such; he

claims that Prudential is liable for the alleged malpractice of Sotillo regardless of how he was selected. In fact, Rice has repeatedly denied that his claim against Prudential rests upon any express or implied term of the Plan. Instead, Rice has insisted that his right to hold Prudential liable for the medical malpractice of Sotillo arises from the state law of respondeat superior, not the Plan. Likewise, both Rice and the Secretary argue that his claim is not completely preempted under § 502(a) because, they argue, complete preemption under § 502(a) is limited to state law claims arising from benefit determinations and violations of ERISA.

However, the only evidence in the record of any agency relationship between Prudential and Sotillo concerns Prudential's designation of Sotillo as a Prudential Health Care Provider pursuant to its administration of the Plan, and "Prudential Health Care Provider" is a defined term under the Plan.[5] Further, we note that Rice has not alleged that Panchal, who is not a Prudential Health Care Provider, was an agent of Prudential. Also § 502(a)(1)(B) includes suits to "enforce rights under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), and we know that if Rice's state law claim is within the scope of § 502(a) it is completely preempted regardless of how he has characterized it. *Taylor,* 481 U.S. at 64, 107 S.Ct. at 1546–47. Under these circumstances, we need to determine whether Rice's state law claim is within the scope of § 502(a)(1)(B) as a suit "to enforce his rights under the plan." 29 U.S.C. § 1132(a)(1)(B).

---

**4.** *See also Black v. TIC Investment Corp.,* 900 F.2d 112, 113 (7th Cir.1990) (claim that plan administrator breached fiduciary duties to participant when it objected to his benefits claim in bankruptcy proceeding after representing that participant could seek benefits in same); *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), where Supreme Court left undisturbed the Ninth Circuit's holding that state law claims for breach of fiduciary duty, intentional and negligent infliction of emotional distress, and breach of its state law covenant of good faith and fair dealing were completely preempted by § 409 of ERISA, which sets forth certain fiduciary duties that bind ERISA fiduciaries and is enforced by an action under § 502(a). *See Russell v. Mass. Mut. Life*

*Ins. Co.,* 722 F.2d 482, 488–90 (9th Cir.1983). Thus although § 409, by its terms, is directed toward the management of plan assets, it also appears to provide a basis for creating and enforcing the federal common law of ERISA that Congress intended to develop under § 502(a). *See Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557–58.

**5.** The Plan defines a "Prudential Health Care Provider" as "A Doctor, Hospital or other provider of medical services or supplies which has agreed with Prudential, directly or indirectly, to arrange to provide for furnishing medical or surgical services and supplies to Covered Persons. Such services and supplies may be furnished at predetermined amounts."

The problem we have is that "[t]he Supreme Court has not yet had an opportunity to ... distinguish carefully between ordinary preemption and 'complete preemption.'" *Warner,* 46 F.3d at 534; *see also Bartholet,* 953 F.2d at 1075 ("national law never fully occupies a field" so "no matter how thoroughly federal law has suffused a body of rules, there is a border with the rest of the law"). Fortunately, we have a designated source of law to guide us. Taking its cue from Congress, the Supreme Court has repeatedly emphasized that the preemptive scope of § 502(a) is to be understood with reference to the preemptive force of § 301 of the Labor Management Relations Act ("LMRA"). *See, e.g., Taylor,* 481 U.S. at 64–66, 107 S.Ct. at 1546–47; *Pilot Life,* 481 U.S. at 52–57, 107 S.Ct. at 1555–57; *Ingersoll–Rand,* 498 U.S. at 144–45, 111 S.Ct. at 486. We have noted this relationship before. *See, e.g., Black v. TIC Investment Corp.,* 900 F.2d 112, 114–115 (7th Cir.1990) (citing estoppel cases under LMRA in connection with use of estoppel under ERISA). And there is a body of case law under § 301 devoted to determining when a state law claim that does not allege breach of a § 301 contract is nonetheless completely preempted by § 301. Therefore, this § 301 case law should inform our inquiry as to when a state law claim that does not allege a breach of an ERISA plan is nonetheless properly recharacterized as a suit to enforce rights under the terms of a plan that is within the scope of § 502(a)(1)(B), and therefore subject to complete preemption. *See, e.g., Pilot Life,* 481 U.S. at 55, 107 S.Ct. at 1557 (citing § 301 preemption cases); *cf. Hawaiian Airlines, Inc. v. Norris,* — U.S. —, — & n. 9, 114 S.Ct. 2239, 2249 & n. 9, 129 L.Ed.2d 203 (1994) (adopting complete preemption principles from § 301 of the LMRA to address preemption under the Railway Labor Act ("RLA") and noting interest in uniformity of preemption principles under federal labor law).

In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court laid down the principles that have come to determine complete preemption of state law claims under § 301 of the LMRA when it held that it is the need to interpret the contract governed by federal law which justifies complete preemption. There, the Court held that a union member's state law action for retaliatory discharge was not preempted merely because the "just cause" provisions of a § 301 contract provided the plaintiff with an overlapping contractual remedy for her discharge, or because both claims arose from a common nucleus of operative fact. The Court reasoned that proving the state law claim involved a "purely factual inquiry" that did not require any interpretation of the § 301 contract, and stated, "[t]hus, the state law remedy is independent of the [§ 301 contract] ... in the sense of 'independent' that matters for § 301 preemption purposes: resolution of the state law claim does not require construing the ... agreement." *Id.* at 407, 108 S.Ct. at 1882. *See also Norris,* — U.S. at —, 114 S.Ct. at 2251 (state law wrongful discharge and whistleblower claims not preempted under RLA because state law claims required only a "purely factual inquiry" into any retaliatory motive of the employer).

And recently, in *Livadas v. Bradshaw,* — U.S. —, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), the Court indicated that "when the meaning of a contract term is not the subject of dispute, the bare fact that a [§ 301 contract] ... will be consulted in the course of state law litigation plainly does not require the claim to be extinguished." *Id.* — U.S. at —, 114 S.Ct. at 2078. In *Livadas* the plaintiff, a discharged worker, brought suit under a California statute that required employers to pay all wages due immediately upon discharge, imposed a penalty for failure to pay promptly, and set the statutory penalty with reference to the worker's wages. The Court held that the state law action was not preempted even though determining the statutory penalty entailed calculating wages according to the terms of a § 301 contract. In doing so, the Court noted that there was no dispute concerning the amount of the penalty, and therefore, "[b]eyond the simple need to refer to the ... [contract] in computing the penalty, the ... [contract] is irrelevant to the dispute...." *Id.* — U.S. at —, 114 S.Ct. at 2079.

*Lingle, Norris,* and *Livadas* show that where the plaintiff seeks recovery for breach of a duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption under the LMRA or RLA. However, we also know that sometimes a state law claim may, in effect, operate as an interpretation of a contract such that it is properly subject to complete preemption. Thus, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Court held that § 301 completely preempted the plaintiff's state law claim for the bad-faith handling of an insurance claim, reasoning that the plaintiff's right to the good-faith administration of benefits was rooted in contract and therefore would inevitably involve interpretation of the § 301 contract. *See Lingle,* 486 U.S. at 405–06, 108 S.Ct. at 1881 (explaining *Lueck* ), *Norris,* —— U.S. at ——–——, 114 S.Ct. at 2247–2248 (same).[6] Similarly, in *Pilot Life,* the Court indicated that § 502(a) completely preempted a state law claim for bad faith (or tortious breach of contract) because § 502(a)(1)(B) was a participant's exclusive vehicle for actions asserting improper processing of benefit claims. *Pilot Life,* 481 U.S. at 48–52, 107 S.Ct. at 1553–55. And in *Taylor,* the Court held that the plaintiff's state law contract and tort (emotional distress) claims were displaced by § 502(a). *Taylor,* 481 U.S. at 62–63, 107 S.Ct. at 1546. Although not entirely clear, these cases seem to indicate that where the state law has the effect of creating a qualitative standard (e.g., "bad faith," "improper") by which the performance of the contract is evaluated, then that state law is completely preempted. *See Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126 (7th Cir.1992) (negligence). So if Rice were claiming that Prudential was negligent when it selected Sotillo to be a Prudential Health Care Provider under the Plan, we

might have a different case; but as we have noted, Rice is not making that claim.

■ At any rate, we need not completely define the parameters of § 502(a)'s complete preemption to resolve this case. *Cf. Lueck,* 471 U.S. at 220, 105 S.Ct. at 1915–16 ("The full scope of the preemptive effect of federal labor law remains to be fleshed out on a case-by-case basis."). But with this converging body of complete preemption case law in mind, we can better address Rice's claim. The common thread running through these cases is that complete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law. And this focus on interpretation of the contract seems well-suited to the language of § 502(a)(1)(B) which concerns suits to recover benefits, determine future benefits, or enforce rights "under the terms of the plan."[7] Also, it seems to jibe with the Supreme Court's § 502(a)(1)(B) complete preemption cases to date insofar as those cases involve claims that benefits were due under the terms of an ERISA plan, or state law claims that measure the quality of contractual performance, and therefore are, in effect, an interpretation of a plan. *See Taylor,* 481 U.S. at 61–65, 107 S.Ct. at 1545–47 (state common law tort (emotional distress) and contract claims based on benefit denial completely preempted); *Pilot Life,* 481 U.S. at 52–56, 107 S.Ct. at 1555–57 (state law claim for bad faith denial of benefits completely preempted under § 514(a), and not saved from preemption under § 514(b)(2)(A), because § 502(a) represents participant's exclusive remedy for improper processing of benefits claims). Seen in this light, we believe that a suit brought by an ERISA plan participant is an action to "enforce his rights under the terms of a plan" within the scope of § 502(a)(1)(B) where the claim rests upon the terms of the

---

**6.** On occasion, it seems, the Court has read *Lueck* differently, and approached complete preemption under § 301 in a very different way, *see IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 855–62, 107 S.Ct. 2161, 2165–68, 95 L.Ed.2d 791 (1987); *United Steelworkers of America v. Rawson,* 495 U.S. 362, 369–72, 110 S.Ct. 1904, 1909–11, 109 L.Ed.2d 362 (1990); yet *Hechler* and *Rawson* are conspicuously absent from the

Court's most recent discussions of complete preemption under § 301. *See Livadas,* —— U.S. at —— n. 18, 114 S.Ct. at 2078 n. 18.

**7.** Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees...." 29 U.S.C. § 185(a).

plan or the "resolution of the [plaintiff's] state law claim ... require[s] construing [the ERISA plan]." *See Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882.[8]

Since Rice has not rested his claim on the terms of the Plan, the question is whether Rice's claim that Prudential is liable for the medical malpractice of Sotillo under the state law of respondeat superior will require construing the ERISA plan, a question of federal law. *See Lueck,* 471 U.S. at 213–14, 105 S.Ct. at 1912 ("While the nature of the state tort is a matter of state law, the question of whether the Wisconsin tort is sufficiently independent of federal contract interpretation to avoid preemption is, of course, a question of federal law."). We conclude that it does not. *See Dukes,* 57 F.3d at 356–61 (accord). In this case, there is no dispute that Sotillo is a Prudential Health Care Provider. The only question is whether Sotillo's status as a Prudential Health Care Provider makes Prudential liable for Sotillo's alleged malpractice under the state law of respondeat superior. Under Illinois law, "an apparent agency gives rise to tort liability where the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency." *Gilbert v. Sycamore Municipal Hospital,* 156 Ill.2d 511, 524, 190 Ill.Dec. 758, 765, 622 N.E.2d 788, 795 (Ill. 1993). "Whether an agent is authorized to act is a question of fact," 156 Ill.2d at 524, 190 Ill.Dec. at 765, 622 N.E.2d at 795, and "[w]hether a person has notice of the lack of an agent's authority is put on notice by cir-

cumstances, is likewise a question of fact." *Id.* Given the purely factual nature of these inquiries, we agree that Rice's claim does not involve the interpretation of the ERISA plan, and cannot be recharacterized as a suit within the scope of § 502(a)(1)(B). While the Plan will serve as evidence of Sotillo's apparent agency, the alleged agency does not necessarily rise and fall with the Plan. Rather, this is a case in which "[b]eyond the simple need to refer to the ... [Plan], the ... [Plan] is irrelevant to the dispute...." *Livadas,* —— U.S. at ——, 114 S.Ct. at 2079.

This fairly narrow view of complete preemption under § 502(a)(1)(B) may seem odd at first glance. Section 514(a)—the statutory counterpart to § 502(a)—preempts any state law that "relates to" an ERISA plan, 29 U.S.C. § 1144(a), and that broadly worded provision routinely preempts state law claims that affect the structuring of ERISA plans, or that purport to determine the substantive rights and duties among parties to its creation and administration.[9] Indeed, it is probably the broad sweep of § 514(a) that explains why Congress intended a federal common law of rights and obligations under the ERISA plan to develop, *see Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1557; *Thomason v. Aetna Life Ins. Co.,* 9 F.3d at 645, 647, and we have already begun to develop this federal common law of ERISA. *See, e.g., Black v. TIC Investment Corp.,* 900 F.2d 112 (7th Cir.1990) (estoppel claim based on written representations can be advanced against un-

---

**8.** Of course, this decision does not give plaintiffs license to avoid complete preemption by artful pleading. *See Sofo,* 13 F.3d at 241; *Anderson v. Humana, Inc.,* 24 F.3d 889 (7th Cir.1994); *Williams,* 482 U.S. at 396–97 & n. 11, 107 S.Ct. at 2431–32 & n. 11.

**9.** *See Ingersoll-Rand v. McClendon,* 498 U.S. at 142–45, 111 S.Ct. at 484–86 (state common law action for "wrongful-discharge-to-defeat-pension-benefits" was preempted under § 514(a) because it was premised on the existence of a plan, and also, because the state-law action was displaced under §§ 502(a) & § 510); *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321 (9th Cir.1992) (malpractice claim against administrator of ERISA plan preempted), *cert. denied,* —— U.S. ——, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *Kuhl v. Lincoln Nat. Health Plan,* 999 F.2d 298 (8th Cir.1993) (same), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *cf. Mack-*

*ey v. Lanier Collection Agency & Service,* 486 U.S. 825, 835–38, 108 S.Ct. 2182, 2188–90, 100 L.Ed.2d 836 (1988) (garnishment of a participant's benefits by third parties not preempted because it does not affect the substantive benefit rights of the plan participant *vis a vis* the parties to the administration of the plan, and Congress intended *not* to preempt state garnishment procedures); *N.Y. Conference of Blue Cross v. Travelers Ins.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995) (state law that increased costs of performing contractual duty to provide benefits, but did not change rights or duties among parties to the plan, was not preempted); *cf. Mackey,* 486 U.S. at 832–34, 108 S.Ct. at 2186–87 (run-of-the-mill tort and contract suits between plan and third parties not preempted by ERISA); *Pohl,* 956 F.2d at 128 (premises liability tort claim against plan would not be preempted by ERISA).

funded single-employer welfare benefits plan). Under these circumstances, one could argue that federal courts should consider any claim brought by a party named in § 502(a), that is preempted under § 514(a), as an effort to invoke the federal common law of ERISA.[10] But beginning with *Franchise Tax Board, supra,* the Court has endeavored to preserve the distinction between complete preemption under § 502(a) and conflict preemption under § 514(a). *Id.* at 22–28, 103 S.Ct. at 2853–56; *see also Livadas,* —— U.S. at ——–—— & n. 18–20, 114 S.Ct. at 2078–79 & n. 18–20 (same for complete preemption under § 301). And ultimately, that effort seems motivated by respect for the rule that provided our starting point: under the well-pleaded complaint rule Rice, not this court, is the master of his complaint. Therefore, while we will not allow Rice to avoid § 502(a)'s complete preemption by casting a claim that is clearly within the boundaries of § 502(a) as a state law action, *see, e.g., Sofo,* 13 F.3d at 241, we will not oblige him to further delineate those boundaries by recasting his complaint *sua sponte* as one that rests on the federal common law of ERISA. *See Williams,* 482 U.S. at 398–99, 107 S.Ct. at 2433 ("[t]he paramount policies embodied in the well-pleaded complaint rule [are] that the plaintiff is the master of the complaint . . . and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."); *see also Thomason,* 9 F.3d at 646–47 (state law waiver claim preempted and removal proper where plaintiff amended complaint to allege claim based on federal common law of ERISA). Thus, while Congress intended federal courts to develop a common law of rights and obligations under the plan, the well-pleaded complaint rule prevents us from forcing Rice to participate in that process.

This court, like a defendant, cannot recharacterize a plaintiff's claim in order to create federal question jurisdiction, for if we did so, then "the plaintiff would be master of nothing," *Williams,* 482 U.S. at 399, 107 S.Ct. at 2433, and the well-pleaded complaint rule would be undermined.

In this case, Rice's claim that Prudential is liable for the alleged medical malpractice of Sotillo does not rest upon the terms of an ERISA plan, and it can be resolved without interpreting an ERISA plan. Therefore, his claim is not properly recharacterized as a suit to enforce his rights under the terms of a plan that is within the scope of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a), and the claim is not "completely preempted" under § 502(a). As a result, Rice's claim does not present a federal question under 28 U.S.C. § 1331, and therefore, his case was improperly removed to federal court under 28 U.S.C. § 1441(b). For this reason, we reverse and remand this case to the district court with directions to remand the case to state court for lack of federal subject matter jurisdiction.

## APPENDIX

### Section 502(a):

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

---

**10.** In fact, the Court has already shown that there is an interrelationship between complete preemption under § 502(a) and preemption under § 514. Where a claim is completely preempted under § 502(a) it is necessarily preempted under § 514(a). *See Pilot Life,* 481 U.S. at 52–56, 107 S.Ct. at 1555–57 (state law claim for bad faith denial of benefits not saved from preemption under § 514(b)(2)(A) because it would undermine exclusive remedies provision of § 502(a)); *Ingersoll–Rand v. McClendon,* 498 U.S. at 142–45, 111 S.Ct. at 484–86 (state com- mon law action for "wrongful-discharge-to-de-feat-pension-benefits" was preempted under § 514(a) because it was premised on the existence of a plan, and also, because the state law action was displaced under § 510 as enforced via § 502(a)). But the opposite is not true, because the language of § 502(a)(1)(B) is narrower, *see Dukes,* 57 F.3d at 355, and as for the preemptive scope of § 502(a) proper, as elaborated by the federal common law of ERISA, only time and well-pleaded complaints can provide an answer.

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;

(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or

(6) by the Secretary to collect any civil penalty under subsection (i) of this section.

**Section 514(a):**

**(a) Supersedure; effective date**

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.