UNITED WISCONSIN LIFE
INSURANCE CO., et
al., Plaintiffs,

v.

KREINER & PETERS CO., L.P.A.,
et al., Defendants.

No. C2–03–541.

United States District Court,
S.D. Ohio,
Eastern Division.

March 4, 2004.

744

Michael Francis Ryan, Patrick Herbert Boggs, Shuler Plank & Brahm, Columbus, OH, for Plaintiffs.

Alvin Earl Mathews, Jr., Barbara Kozar Letcher, Rick Edmund Marsh, Lane Alton & Horst, Joseph Miles Gibson, Columbus, OH, for Defendants.

### ORDER AND OPINION

MARBLEY, District Judge.

## I.  INTRODUCTION

This matter is before the Court on Defendants', Kreiner & Peters Co., L.P.A.'s ("Kreiner & Peters" or "the firm") and James Peters' ("Peters"), collective Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).  Defendant Brian W. Benbow's ("Benbow") also filed a Motion to Dismiss, seeking dismissal of the Complaint filed by Plaintiffs', United Wisconsin Life Insurance Company ("United Wisconsin") and American Medical Security, Inc. ("American Medical") for the same reasons set forth by Defendants Kreiner & Peters and Peters.  In their Complaint, Plaintiffs' allege that Defendants engaged in legal malpractice in the underlying claim brought against United Wisconsin by Richard C. Neust, Jr. ("Neust").

For the following reasons, Defendants' Motions to Dismiss are **DENIED.**

## II.  FACTS[1]

In 1992, Richard C. Neust, Jr. ("Neust"), an employee at Peter Tinn, Inc., a tire wholesaler, began experiencing hear-

---

**1.**  As required by Rule 12(b)(6), for the purpose of evaluating Defendants' Motions to Dismiss, the facts as alleged by Plaintiffs in the Complaint will be taken as true.

ing problems. Upon consulting Dr. Emanuel D. Noche ("Noche"), Dr. Noche diagnosed Neust with inflamation of the ear canal and proceeded to treat the condition. Later, in 1996, Neust consulted with an otolaryngologist who determined that Neust was completely deaf in both ears. The otolaryngologist concluded that the deafness resulted from tumors located in Neust's auditory canal, as well as vascular tumors located in his brain. Ultimately, Neust was diagnosed with neurofibromatosis, a heredity disease, which required hospitalization and surgery. The resulting medical and hospital bills were paid by Neust's employer, pursuant to the Peter Tinn, Inc. Employee Benefit Plan ("Benefit Plan"), a self-funded plan, under which Neust, as an employee, was a participant.

Defendants, American Medical and United Wisconsin, are separate but affiliated corporations. American Medical, supervised the Benefit Plan by providing administrative and claim processing services for Peter Tinn, Inc. United Wisconsin had issued an Excessive Loss Insurance Policy ("Excess Policy") to the Benefit Plan. The Excess Policy provided insurance to reimburse the Benefit Plan for any participants' claims that exceeded $3,000 per annum. Neust's claim for his medical and hospital bills, as discussed above, exceeded $3,000, thereby invoking the Excess Policy.

Eventually, Neust filed a medical malpractice action against Dr. Noche based on Dr. Noche's alleged failure to diagnose his neurofibromatosis. In February 1999, an attorney representing Neust in his medical malpractice action contacted American Medical and requested copies of Neust's medical and hospital bills. This alerted American Medical to the fact that there might be a potential subrogation or reimbursement claim for the paid medical and hospital expenses, if Neust did recover in the malpractice action. When American Medical spoke with Neust's medical malpractice attorney, however, the attorney advised American Medical that the surgery Neust underwent would have been required regardless of the misdiagnosis, such that even if Neust recovered in his malpractice case, reimbursement of the medical and hospital bills might not be appropriate.

In May 1999, American Medical forwarded copies of the documents relating to Neust's claim to Kreiner & Peters, a firm that had represented American Medical and United Wisconsin in subrogation work in the Columbus, Ohio area before. Kreiner & Peters acknowledged receipt of the file from American Medical. Notably, the materials sent to the law firm included a memorandum summarizing the conversation with Neust's malpractice attorney, wherein the attorney had advised American Medical that a reimbursement claim might not be appropriate because of the lack of a casual relationship between the alleged malpractice committed by Dr. Noche—the misdiagnosis—and the surgery.

Nevertheless, in June 1999, Kreiner & Peters sent a letter to Neust, personally, notifying him of a potential reimbursement claim by American Medical; and later, in January of 2000, the firm sent notices to Dr. Noche and Neust's medical malpractice attorneys, notifying them of American Medical's potential reimbursement claim. When, in September of 2000, American Medical inquired of Kreiner & Peters about the status of Neust's claim, the firm claimed to be pursuing verification of whether Neust had made any recovery against Dr. Noche. Still, at this time, however, Kreiner & Peters acknowledged that Neust's attorneys believed the surgery would have been necessary, regardless of the misdiagnosis.

Despite all of the aforementioned, on April 9, 2001, Benbow, then an associate

with Kreiner & Peters, informed Neust's attorneys that he represented United Wisconsin and demanded that Neust reimburse the company for the medical and hospital bills paid by the Benefit Plan/Excess Policy, totaling $28,279.68. Again, Neust's attorney advised Benbow, specifically, that the surgery Neust underwent would have been required regardless of the misdiagnosis, and, furthermore, that no recovery had been made in the malpractice action still.

Beyond that discussion, however, Benbow failed to conduct any pre-suit investigation, as required under the Federal Rules of Civil Procedure, regarding the validity of a claim by United Wisconsin against Neust. Yet, without said investigation or even authorization from American Medical or United Wisconsin, on April 12, 2001, Benbow filed a civil complaint under federal law, the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1001, *et seq.*), against Neust on behalf of United Wisconsin.[2] Therein, Benbow sought reimbursement of Neust's hospital and medical bills paid by the Benefit Plan ("Reimbursement Action"). Neust responded with an answer and counterclaim, seeking costs and attorneys' fees pursuant to 28 U.S.C. § 1132(g)(1) and Fed.R.Civ.P. 11, because "Plaintiff has refused to voluntarily dismiss this action knowing that it has no basis in fact."

Indeed, Plaintiffs concede that a number of the allegations asserted by Benbow in the Reimbursement Action Complaint were not factually correct or supported. Moreover, throughout the litigation, Plaintiffs allege that Benbow violated a number of court orders and precipitated unnecessary disputes with opposing counsel, all to their detriment, as clients of Kreiner & Peters. Benbow even went so far as to disregard instructions from United Wisconsin and American Medical and purposefully frustrate their efforts at settling the Reimbursement Action. United Wisconsin and American Medical were not aware of Benbow's actions as they occurred, however, but only became aware of them sometime in mid-June of 2002.

As a result of Benbow's conduct, on February 18, 2003, Judge James L. Graham issued an opinion and order finding that sanctions against Benbow and Kreiner & Peters in the Reimbursement Action were appropriate under Fed. Civ. R. 37, 28 U.S.C. § 1927, and the bad faith exception to the American Rule regarding awards of attorney's fees.[3] Not surprisingly, Plaintiffs terminated the attorney-client relationship with Kreiner & Peters, and the firm withdrew as counsel in the Reimbursement Action. Subsequently, Plaintiffs settled the Reimbursement Action with Neust, resulting in United Wisconsin and American Medical having to pay Neust $99,478.

Despite the settlement, Neust filed a separate action against United Wisconsin, American Medical, and Kreiner & Peters in state court, asserting that all of the parties were liable for Benbow's conduct in prosecuting the Reimbursement Action.[4]

---

**2.** *United Wisconsin Life Ins. v. Richard C. Neust*, Case No. C2–01–335.

**3.** "Under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees. The principal exception to this rule is a district court's inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for oppressive rea-

sons.'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir.1997) (citations omitted).

**4.** Therein, Neust made claims for: (1) malicious prosecution; (2) abuse of process; (3) intentional infliction of emotional distress; (4) breach of implied covenant of good faith and fair dealing; (5) breach of contract; (6) fraud; and (7) negligent supervision and re-

In this action, United Wisconsin and American Medical, together, have filed suit against Kreiner & Peters, Peters, and Benbow, alleging that Defendants' actions leading up to and during the Reimbursement Action amounted to legal malpractice and a breach of fiduciary duty. The Plaintiffs in the case at issue here also claim they have sustained and will sustain damages as a result of Peters' and Kreiner & Peters' negligent supervision and retention of Benbow.

## III. PROCEDURAL HISTORY

Plaintiffs filed their Complaint in this court on June 13, 2003. The Complaint alleges two counts against Defendants Benbow, Peters, and Kreiner & Peters, namely, legal malpractice and breach of fiduciary duty. The Complaint also states a claim for negligent supervision and retention against Peters and Kreiner & Peters. On August 12, 2003, Peters and Kreiner & Peters moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging the claims are barred by Federal ERISA law under 29 U.S.C. § 1001, et seq. Benbow then moved to dismiss the Complaint on August 21, 2003, for the same reasons set forth by Kreiner & Peters and Peters, in their earlier Motion to Dismiss. On September 18, 2003, Plaintiffs filed their memorandum opposing Defendants' motions to dismiss, to which Kreiner & Peters and Peters replied on September 29, 2003.[5] Accordingly, Defendants' Motions are ripe for review.

## IV. STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is constrained to accept as true the allegations of a complaint. *Associated Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Lee v. Western Reserve Psychiatric Habilitation Ctr.*, 747 F.2d 1062, 1065 (6th Cir.1984). A motion to dismiss may be granted, "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996).

## V. ANALYSIS

Defendants argue Plaintiffs' claims of legal malpractice, negligent supervision and retention, and breach of fiduciary duty are barred by ERISA, 29 U.S.C. § 1001, et seq, because it prohibits any and all causes of action outside those enumerated under 29 U.S.C. § 1132(a), including awards of compensatory or punitive damages. Defendants claim ERISA provides a comprehensive remedial scheme, and Congress intended those remedies to be exclusive.

It is true that ERISA preempts any and all State laws that "relate to" an ERISA plan, 29 U.S.C. § 1144(a), including statutory and common law. 29 U.S.C. § 1144(c)(1). A state law falls within ERISA's preemptive scope "if it has connection with or reference to" an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490

tention, and seeks compensatory and punitive damages.

5. As of the time of this Opinion & Order, Benbow had not filed a reply to Plaintiffs' Memorandum in Opposition; but, presumably, as he did with his Motion to Dismiss, Benbow would concur with the rationale set forth by the other Defendants regarding why they, allegedly, are entitled to dismissal under 12(b)(6), despite Plaintiffs' arguments to the contrary.

(1983). The absence of a particular remedy for an alleged wrong relating to an ERISA plan, however, has no bearing on whether state law is preempted. *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 418–19 (4th Cir.1993).

Specifically, ERISA contains two provisions relating to preemption. The first is 29 U.S.C. § 1132, which provides under subsection (a) that anyone who qualifies as a "participant or beneficiary" of an employee benefit plan may sue to enforce rights conferred upon them by ERISA. 29 U.S.C. § 1132(a). This provision *impliedly* preempts claims brought in state court that could have been brought under ERISA's provisions. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 943 (6th Cir.1994). The second provision is 29 U.S.C. § 1144, which is the express provision, and preempts all non-exempt state laws insofar as they "relate to" an employee benefit plan. *Id.* Thus, the issue for this Court to decide is whether, as Defendants contend, Plaintiffs' legal malpractice claims against them are either impliedly or expressly preempted by ERISA, such that the claims should be dismissed.

First, it is important to note that the Sixth Circuit, not unlike many other circuit courts, has not addressed this issue.[6] Of the circuits that have, however, all seem in agreement. One commentator noted the consistency in authority when stating, "the courts agree that ERISA does not preempt state law malpractice and other tort claims involving professional services rendered to an ERISA plan." Vallone, *Lawyers May Not Be 'Fiduciaries,' but that Won't Help Them Escape Non–Fiduciary Exposure, Particularly as Forecast by a Recent Decision*, 68 DEF. COUNS. J. 435, 437 (2001). In explaining the rationale of those courts, the commentator wrote,

> [c]ourts consistently have rejected pre-emption arguments in case [sic] involving legal malpractice claims. The courts are understandably concerned with the ramifications of a contrary rule. The pre-emption of state law claims potentially could leave the client without any meaningful remedy, in view of the limited relief available against plan attorneys under ERISA.

*Id.* at 437–38, 13 F.3d 940. *See also, Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, *324 (2d Cir.2003) (explicating, "courts

---

**6.** As of 1996, the Fourth Circuit in *Custer* noted, "[w]hether ERISA preempts legal malpractice claims against attorneys representing ERISA plans is a question of first impression for the federal circuit courts, although several federal district courts have addressed the issue, uniformly concluding that ERISA does not preempt such claims." 89 F.3d at 1166. Since then, the Fourth Circuit still appears to be the only circuit court directly to address the issue, although a host of additional district courts have. All agree with the Fourth Circuit, with the exception of the Western District of Michigan, in a factually distinguishable case, involving investment advice and state law claims of negligence, fraud and misrepresentation, breach of contract, and unjust enrichment. *Miller v. Retirement Funding Corp.*, 953 F.Supp. 180 (W.D.Mich. 1996). Importantly, too, unlike legal malpractice claims, which are not specifically addressed by ERISA, so-called "investment advice," which was involved in the *Miller* case, is. For example, someone who provides investment advice is expressly designated a "fiduciary" under ERISA, allowing the person to bring suit as such. *See* 29 U.S.C. § 1002–21(A)(ii) ("... a person is a fiduciary with respect to a plan to the extent ... he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so ..."). Hence, *Miller* does not present the Court with any reason to deviate from all the consistent authority regarding the viability, notwithstanding ERISA's preemptive provisions, of legal malpractice claims under state law.

routinely find that garden-variety state-law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants, attorneys, and consultants, are not preempted," *citing, LeBlanc v. Cahill,* 153 F.3d 134, 138 (4th Cir.1998); *AZ State Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 717–18 (9th Cir. 1997); *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1460 (4th Cir.1996); *Custer v. Sweeney,* 89 F.3d 1156, 1166–67 (4th Cir. 1996); *Airparts Co., Inc. v. Custom Benefit Svcs. of Austin, Inc.,* 28 F.3d 1062, 1067 (10th Cir.1994); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146, 1152–53 (3d Cir.1989); *Harmon City, Inc. v. Nielsen & Senior,* 907 P.2d 1162, 1170 (Utah 1995)). Plaintiffs make this policy argument in their Memorandum in Opposition when they state:

> permitting attorneys to shield themselves behind the ERISA preemption law whenever they represent a client in connection with an ERISA matter would effectively immunize ERISA lawyers from the consequences of their legal malpractice—that was not the purpose of ERISA.

Undeniably then, such rationale and the weight of existing authority support finding that Plaintiffs' claims are not preempted by ERISA. Because this circuit has not considered the issue, however, the Court will engage in the traditional preemptive analysis, as well, in deciding Defendants' Motion.

■ There are two prerequisites to complete preemption under 29 U.S.C. § 1132(a). First, the plaintiff must be eligible to bring an action under 29 U.S.C. § 1132(a). *Rice v. Panchal,* 65 F.3d 637, 641 (7th Cir.1995). Under 29 U.S.C. § 1132, a *fiduciary* of a plan may bring suit to enforce provisions of the plan. Thus, it is first necessary to determine whether either United Wisconsin or American Medical is a "fiduciary" under ERISA.

A "fiduciary," "includ[es], but [is] not limited to, any administrator, officer, trustee, or custodian." 29 U.S.C.A. § 1002. American Medical then, as the plan supervisor, likely would qualify as a fiduciary, making it eligible to bring suit under ERISA. As for United Wisconsin, however, in his May 10, 2002 Order in the Reimbursement Action,[7] Judge Graham found that United Wisconsin was not and never had been a fiduciary of the Benefit Plan, and accordingly, did not have standing. This Court agrees with Judge Graham's conclusion on that issue, such that this Court now finds that American Medical might be a fiduciary, but United Wisconsin would not. Therefore, analysis of the first preemption prerequisite is not dispositive, and it is necessary to consider the second prerequisite: whether, at a minimum, American Medical's claim comes within the subject matter of 29 U.S.C. § 1132(a). *Rice,* 65 F.3d at 641. In other words, the issue now is whether a legal malpractice claim falls under the civil enforcement provisions of 29 U.S.C. § 1132(a), as being a suit:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief

  (i) to redress such violations or

  (ii) to enforce any provisions of this subchapter or the terms of the plan . . ."

29 U.S.C.A. § 1132. If it does not, then, even assuming American Medical were a fiduciary, the legal malpractice suit it and United Wisconsin have before this Court would not be preempted by ERISA.

7. Case No. C2–01–335

Plaintiffs assert that Defendants breached their duty by filing the ERISA Reimbursement Action without authorization, disregarding instructions from Plaintiffs to dismiss the case, and purposely frustrating efforts by Plaintiffs to settle it, all of which resulted in Plaintiffs being liable to Neust. Plaintiffs' claims do not rest, however, upon the terms of the Benefit Plan, nor implicate it in any way. The resolution of their claims will not require this Court to construe the terms of the Benefit Plan, nor are Plaintiffs seeking to enjoin acts or practices that violate a provision of ERISA or the terms of the Benefit Plan. In other words, Plaintiffs' claims of legal malpractice are separate and distinct from claims for violations of ERISA or the Benefit Plan. They implicate only the attorney-client relationship between Defendants and Plaintiffs, which, at most, is tangentially related to ERISA only in that Benbow, *without Plaintiffs' authorization*, filed an ERISA claim against Neust on behalf of United Wisconsin.

Plaintiffs' claims that Defendants committed legal malpractice, moreover, will not require review of the Benefit Plan or otherwise necessitate construction of it. *See e.g., Rice*, 65 F.3d at 645 (concluding that medical malpractice claims based on state law do not require construction of a benefit plan as support for its conclusion that a state common law claim of *respondeat superior* for alleged medical malpractice was not completely preempted by ERISA). Notably, too, the Sixth Circuit has held that, "[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence, such a claim is *for the recovery of an ERISA plan benefit*." *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) (quoting *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991)) (emphasis added). Here, the recovery sought by Plaintiffs is for them, not the Benefit Plan, which American

Medical administers and for which United Wisconsin provides the Excess Policy. Thus, the subject matter of Plaintiffs' claims are not covered under ERISA.

Furthermore, despite the fact that the Sixth Circuit has yet to decide the precise issue of ERISA preemption regarding legal malpractice claims, that Court has found that when an ERISA plan's relationship with another entity is not governed by ERISA, the plan is governed by state law. *Smith v. Provident Bank*, 170 F.3d 609, 617 (6th Cir.1999) (citing *Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 550 (6th Cir.1998)). Hence, the existing precedent in this Circuit and others make it reasonable to conclude that when the relationship between the parties—in this case, the ERISA plan supervisor and the excess coverage provider and their legal counsels—is not governed by ERISA, it is governed by state law.

It also is worth commenting, that, as a policy matter, for more than a century, Ohio law has provided a common-law tort remedy for legal malpractice. *See Harter v. Morris*, 18 Ohio St. 492 (1869). Ohio law, too, recognizes a common-law claim for legal malpractice based on negligent representation. *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164, 1169–70 (1997); *Loveman v. Hamilton*, 420 N.E.2d 1007 (Ohio 1981); *Harter v. Morris*, 18 Ohio St. 492 (1869). It would be unreasonable to presume that Congress, in enacting ERISA, intended to preempt this important area of state law, especially for claims that in no way relate to ERISA violations or even the terms of a Benefit Plan. Plaintiffs' claims, in stark contrast, are that Defendants, acting as their legal counsel, committed malpractice. *See Custer v. Sweeney*, 89 F.3d 1156 (4th Cir.1996); *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879

F.2d 1146 (3rd Cir.1989) (indicating the court's reluctance, in the absence of clear indicia in the act or legislative history, to ascribe to Congress an intention to intrude in an area where state law has traditionally prescribed the standards of professional liability). *See also Smith v. Provident Bank,* 170 F.3d 609, 617 (6th Cir.1999) (citing with approval *Price Waterhouse,* 879 F.2d at 1151–53).

Such sentiment was echoed by the Third Circuit in *Painters of Philadelphia,* when it first noted that the parties arguing for preemption had not pointed to any "text or legislative history to show that Congress affirmatively intended to create an ERISA cause of action for professional malpractice claims." 879 F.2d at 1152. It then stated that:

> state law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an intention to intrude in this area. Far from there being clear indicia of an intent to create an implied professional malpractice cause of action under ERISA, there is not a scintilla of evidence that Congress had this in its mind and that fact is alone fatal to appellants' argument.

*Id.* at 1152–53.

Accordingly, the Court finds that Plaintiffs' claims against Defendants for legal malpractice are not claims for violations of ERISA or the terms of the Benefit Plan. Resolution of Plaintiffs' claims will not require this Court to construe either ERISA or the terms of the Benefit Plan, nor will any recovery from this case go to the Benefit Plan. Thus, Plaintiffs' claims are not governed by ERISA, 29 U.S.C. § 1132; rather, they are governed solely by state law.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motions to Dismiss.

**IT IS SO ORDERED.**