**Kelly A. CRUM, as administrator, of the Estate of Gary L. Crum, Deceased, and Kelly A. Crum, individually, Plaintiff,**

v.

**HEALTH ALLIANCE–MIDWEST, INC., Defendant.**

**No. 98–CV–2241.**

United States District Court, C.D. Illinois, Danville/Urbana Division.

May 6, 1999.

David A. Tuggle, Tuggle & Schiro, Danville, IL, for plaintiff.

David L. Drake, Drake, Narup & Mead, P.C., Springfield, IL, for defendant.

## ORDER

McCUSKEY, District Judge.

On September 3, 1998, Plaintiff, Kelly A. Crum, individually and as administrator of the Estate of Gary L. Crum, filed a nine-count Complaint against Defendant, Health Alliance–Midwest, Inc., in the circuit court of Vermilion County. On October 13, 1998, Defendant filed a Notice of Removal (# 1) to this court. Defendant argued that the action was removable because Plaintiff's claims were completely preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §§ 1001 et seq.). Also on October 13, 1998, Defendant filed a Motion to Dismiss (# 3) Plaintiff's Complaint and a supporting Memorandum of Law (# 4). On November 13, 1998, Plaintiff filed an Objection to Removal and Motion to Remand or, in the Alternative, Motion for Leave to Amend the Complaint and Motion to Remand (# 6). Defendant filed a Response (# 7) and Memorandum of Law (# 8) on November 30, 1998. On December 23, 1998, the Magistrate Judge filed a Report and Recommendation (# 9) recommending that Defendant's Motion to Dismiss (# 3) be granted and Plaintiff's Motion (# 6) be denied. On January 11, 1999, Plaintiff filed an Objection to the Report and Recommendation (# 10). This court agrees with Plaintiff's Objection. Accordingly, Plaintiff's alternative Motion for Leave to Amend the Complaint and Motion to Remand (# 6) is GRANTED. Therefore, Defendant's Motion to Dismiss (# 3) is DENIED as moot.

## FACTS

In her Complaint, Plaintiff alleged that she was the spouse of the deceased, Gary Crum (Gary). Gary was an insured under a policy of health care insurance provided by Defendant. During the evening hours of December 19, 1996, Gary began experiencing symptoms "including feeling agitated and upset, nausea, and an urgent need, but inability, to vomit." At that time, Gary was 42 years old. According to the Complaint, the terms of the contract of insurance with Defendant required Gary to contact Defendant at a specified telephone number and consult with an advisory nurse prior to seeking medical attention. Plaintiff alleged that the advisory nurses were employees of Defendant or acted as Defendant's agents. Plaintiff alleged that, at approximately 10:50 p.m., she contacted an advisory nurse on Gary's behalf and informed the nurse of Gary's symptoms and the history of heart trouble in Gary's family. Plaintiff told the nurse she wanted to make sure Gary was not having a heart attack. The advisory nurse told Plaintiff that Gary's symptoms were probably due to excess stomach acids and that he should be fine. Plaintiff again telephoned an advisory nurse at approximately 11:34 p.m. Plaintiff informed the nurse of Gary's continued symptoms and also that he was experiencing pain in the middle of his chest. According to Plaintiff's Complaint:

> The advisory nurse indicated that GARY L. CRUM should sit at a 40 degree angle, that he should drink some milk and that this would allow the stomach acids to recede and would help with the discomfort, and that he would be fine in the morning, and that he did not need to go to an emergency room.

At 11:55 p.m., Gary's symptoms had not ceased, and Plaintiff decided to drive Gary to a Medical Center. On the way, Gary

became unresponsive. Cardiopulmonary resuscitation was performed when Gary arrived at the Medical Center at 12:05 a.m. The efforts were not successful, and Gary was pronounced dead at 12:29 a.m. The cause of death was later determined to be acute myocardial infarction.

In Count I, Plaintiff alleged that Defendant was liable under Illinois' Wrongful Death Act (740 Ill.Comp.Stat. 180/1 et seq. (West 1996)). Specifically, she alleged that Defendant, "by and through its agents and/or employees, was guilty of one or more [of] the following acts and/or omissions:

> a. The advisory nurse or nurses undertook to render a medical diagnosis of GARY L. CRUM's condition, even though they were not trained, qualified nor licensed to practice medicine in the State of Illinois;

> b. The advisory nurse or nurses rendered medical diagnoses of GARY L. CRUM's condition, even though they were not trained, qualified nor licensed to practice medicine in the State of Illinois; and

> c. The advisory nurse or nurses failed to instruct GARY L. CRUM immediately to seek medical attention at a hospital emergency room."

■ In Count II, Plaintiff alleged a cause of action based upon Illinois' Survival Act (755 Ill.Comp.Stat. 5/27–6 (West 1996)). This court notes, however, that the Survival Act creates no cause of action, but is merely the conduit through which a cause of action is transferred to the estate representative. *Owens v. Archer–Daniels–Midland Co.,* 30 F.Supp.2d 1082, 1083–84 (C.D.Ill.1999). In Count III, Plaintiff alleged that, because of Defendant's negligent acts and omissions, she "was compelled to expend and become liable for large sums of money for medical, hospital, funeral, burial and other expenses." She sought recovery for these expenses pursuant to the Family Expense Act (750 Ill.Comp.Stat. 65/15 (West 1996)).

In Count IV, Plaintiff alleged that Defendant was liable under the Wrongful Death Act for its own negligence in imposing "the requirement that its clients submit to a medical diagnosis by an advisory nurse prior to seeking emergency medical care and treatment." In Counts V and VI, Plaintiff asserted actions pursuant to the Survival Act and the Family Expense Act based upon the allegations set out in Count V. In Counts VII, VIII and XI, Plaintiff alleged that Defendant was liable pursuant to the Wrongful Death Act, the Survival Act and the Family Expense Act based upon Defendant's breach of contract.

Defendant asserted in its Notice of Removal and Motion to Dismiss that all of Plaintiff's claims are completely preempted by ERISA, giving this court jurisdiction over Plaintiff's cause of action. Defendant also argued that, because Plaintiff's Complaint contains no claim for damages authorized by ERISA, Plaintiff's Complaint must be dismissed with prejudice. Plaintiff objected to the removal of her cause of action against Defendant and sought remand to the Illinois court. As noted, the Magistrate Judge agreed with Defendant that the cause of action was completely preempted by ERISA and was removable to this court. The Magistrate Judge also recommended granting Defendant's Motion to Dismiss. In her Objection to the Report and Recommendation, Plaintiff argues only that Counts I through III of her Complaint are not preempted by ERISA. Accordingly, this court accepts the Magistrate Judge's determination that Counts IV through IX of Plaintiff's Complaint are completely preempted by ERISA.

## ANALYSIS

### I. Removal

■ This court must determine whether Counts I through III of Plaintiff's Complaint are completely preempted by ERISA and were properly removed to this court. If not, this court lacks subject matter jurisdiction over these Counts of Plaintiff's Complaint and the cause must be

remanded to the state court. This court notes that Defendant, the party seeking removal, has the burden of establishing the jurisdiction of the district court. *In re Application of County Collector,* 96 F.3d 890, 895 (7th Cir.1996); *Bromenn Healthcare v. Northwestern Nat'l Life Ins. Co.,* 806 F.Supp. 799, 803 (C.D.Ill.1992).

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States...." 28 U.S.C. § 1441(a). Whether removal was proper in this case depends upon whether this court has "federal question" jurisdiction under 28 U.S.C. § 1331, which gives federal courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995).

In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that state law claims which fall under ERISA's § 502(a) civil enforcement provisions (29 U.S.C. § 1132(a)(1)(B)) are completely preempted. Section 502(a)(1)(B) provides that a plan beneficiary may bring suit in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a) evidences Congress' intent for this section to be the exclusive remedy for rights guaranteed under ERISA. *Taylor,* 481 U.S. at 65–66, 107 S.Ct. 1542; *City of Rockford v. Raymond,* 1999 WL 218549, at *1 (N.D.Ill. 1999).

II. Distinction between "complete" preemption and "conflict" preemption

■ It is important to note that only claims which may be characterized as falling under § 502(a)(1)(B) are completely preempted and may properly be removed

to federal court. In fact, the Seventh Circuit has noted that the "complete preemption doctrine" is actually a misnomer because it is not a preemption doctrine but, rather, a federal jurisdiction doctrine. *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1486–87 (7th Cir.1996). Claims may also be preempted under § 514(a) of ERISA, which provides that state law claims which "relate to" matters governed by ERISA are preempted. See 29 U.S.C. § 1144(a). Claims preempted under § 514(a) are *not* removable to federal court. *Jass,* 88 F.3d at 1487–88; *Raymond,* 1999 WL 218549, at *2. Rather, § 514(a) preemption is considered "conflict preemption" and merely states a federal defense, which does not provide a basis for federal jurisdiction or removal. *Speciale v. Seybold,* 147 F.3d 612, 615 (7th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 542, 142 L.Ed.2d 450 (1998); *Jass,* 88 F.3d at 1487–88. Not every state claim "related to" ERISA under § 514(a) is completely preempted. *Moran v. Rush Prudential HMO, Inc.,* 1999 WL 181990, at *4 (N.D.Ill.1999); see also *Rice,* 65 F.3d at 646 n. 10; *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 355 (3d Cir.1995), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995).

■ In fact, this court believes that Counts I through III of Plaintiff's Complaint would *not* be preempted under § 514(a) of ERISA. The Supreme Court carefully addressed the issue of § 514(a) preemption in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court stated that it must look "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Travelers,* 514 U.S. at 656, 115 S.Ct. 1671; see also *De Buono v. NYSA–ILA Medical & Clinical Services Fund,* 520 U.S. 806, 813–14, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). The Court also stated that preemption "does not occur ... if the state law has only a

tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability". *Travelers*, 514 U.S. at 661, 115 S.Ct. 1671 (citations omitted). The Court further concluded that "nothing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *Travelers*, 514 U.S. at 661–62, 115 S.Ct. 1671.

Based upon the Supreme Court's language in *Travelers* and *De Buono*, the court in *Pappas v. Asbel*, 724 A.2d 889, 893 (Pa.1998), concluded that negligence claims against a health maintenance organization (HMO) do not "relate to" an ERISA plan. The court in *Pappas* determined that negligence laws had "only a tenuous, remote, or peripheral connection with [ERISA] covered plans" and were not preempted. *Pappas*, 724 A.2d at 894. Accordingly, the court found that a claim based upon denial of authorization for treatment was *not* preempted under § 514(a) of ERISA. *Pappas*, 724 A.2d at 894. Other courts have similarly concluded that § 514(a) of ERISA does not preempt claims based upon negligence in providing medical services. See *Moreno v. Health Partners Health Plan*, 4 F.Supp.2d 888, 892–93 (D.Ariz.1998) ("Congress has expressed no desire that ERISA be used to degrade the quality of healthcare"); *Edelen v. Osterman*, 943 F.Supp. 75, 77 (D.D.C.1996); *Pacificare of Okla., Inc. v. Burrage*, 59 F.3d 151, 154–55 (10th Cir.1995); *Haas v. Group Health Plan, Inc.*, 875 F.Supp. 544, 548–49 (N.D.Ill.1994); *Smith v. HMO Great Lakes*, 852 F.Supp. 669, 672 (N.D.Ill. 1994); see also *Corporate Health Ins. Inc. v. Texas Dept. of Ins.*, 12 F.Supp.2d 597, 611–20 (S.D.Tex.1998) (state law provisions making managed care entities liable for substandard health care treatment decisions not preempted by § 514(a) of ERISA); *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Pathology Lab. of Ark., P.A.*, 71 F.3d 1251, 1254 (7th Cir.1995) (ERISA "does

not oblige federal courts to take over the entire subject of medical care"), *cert. denied*, 517 U.S. 1233, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996); but *cf. Jass*, 88 F.3d at 1493–95 (vicarious liability claim against ERISA plan for doctor's negligence preempted by § 514(a)); *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 303 (8th Cir.1993) (claim based upon plan administrator's delay in precertification of heart surgery "relate[d] to" ERISA plan and was preempted under § 514(a)), *cert. denied*, 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1334 (5th Cir.1992) (tort action for wrongful death of unborn child who went into distress and died after ERISA plan refused to authorize monitoring of fetus recommended by doctor preempted by § 514(a) of ERISA), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992).

This court's conclusion that the claims in Counts I through III of Plaintiff's Complaint are not preempted under § 514(a) of ERISA makes it unlikely that the claims could be subject to complete preemption. See *Rice*, 65 F.3d at 646 n. 10 ("[w]here a claim is completely preempted under § 502(a) it is necessarily preempted under § 514(a)").

### III. Complete preemption

■■ Under the complete preemption doctrine, if a plaintiff's state law claim falls under the civil enforcement provisions of ERISA § 502(a), then the state law claim is properly "recharacterized" as one arising under federal law and may be removed to federal court. *Rice*, 65 F.3d at 640; see also *Speciale*, 147 F.3d at 615. Complete preemption is narrow and, for the most part, applies only to claims to recover benefits under an ERISA plan. *Mahon v. Cyganiak Planning, Inc.*, 41 F.Supp.2d 910, 914 (E.D.Wis.1999). In the Seventh Circuit, courts examine three factors to determine whether a claim is within the scope of § 502(a) and properly recharac-

terized as a federal claim: (1) whether the plaintiff is eligible to bring a claim under that section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law. *Speciale*, 147 F.3d at 615; *Jass*, 88 F.3d at 1487; *Mahon*, 41 F.Supp.2d at 913–14. When all three factors are present, a state-law claim is properly recharacterized as an ERISA § 502(a) claim. *Moran v. Rush Prudential HMO, Inc.*, 1998 WL 325204, at *2 (N.D.Ill.1998) (citing *Jass*, 88 F.3d at 1489).

In *Rice*, the plaintiff filed a cause of action against his insurer, an ERISA health care benefits plan, claiming the plan was liable for the medical malpractice of one of the plan's providers under the state law of respondeat superior. *Rice*, 65 F.3d at 638. The Seventh Circuit concluded that Rice's claim that the plan was liable for the alleged malpractice of one of the plan's providers did not rest upon the terms of an ERISA plan and could be resolved without interpreting an ERISA plan. *Rice*, 65 F.3d at 645–46. Accordingly, the plaintiff's claim could not properly be recharacterized as a suit to enforce his rights under § 502(a), was not completely preempted by ERISA and was improperly removed to federal court. *Rice*, 65 F.3d at 646; see also *Dukes*, 57 F.3d at 356; *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir.1994); *Herrera v. Lovelace Health Systems, Inc.*, 35 F.Supp.2d 1327, 1331–32 (D.N.M.1999); *Lancaster v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.*, 958 F.Supp. 1137, 1145–46 (E.D.Va.1997).

Subsequently, in *Jass*, the Seventh Circuit decided a case where the plaintiff was dissatisfied with her knee replacement surgery and brought a negligence action against an ERISA plan, a nurse and a physician. The plaintiff claimed that the nurse, as an agent of the ERISA plan,

determined that physical therapy to rehabilitate the plaintiff's knee was not necessary. *Jass*, 88 F.3d at 1485. The plaintiff claimed that this denial of necessary treatment caused her to suffer permanent injury to her knee. *Jass*, 88 F.3d at 1485. The Court concluded that the plaintiff's claim against the nurse was, in effect, a claim for denial of benefits. *Jass*, 88 F.3d at 1489 (nurse was a utilization review administrator for the ERISA plan who, pursuant to the position, determined the appropriate health benefits due to the plaintiff under the Certificate of Insurance). Accordingly, the plaintiff's claim against the nurse and vicarious liability claim against the ERISA plan were within the scope of § 502(a) of ERISA and were completely preempted. *Jass*, 88 F.3d at 1485, 1490–91. The Court then stated that the plaintiff should be given the opportunity to amend her complaint to request appropriate relief under § 502(a), presumably for the recovery of benefits due under the plan. *Jass*, 88 F.3d at 1491.

Applying the three factors to this case, this court notes that the first factor is met because it is undisputed that Defendant is an ERISA plan and Plaintiff, as a beneficiary of the plan, is entitled to bring a claim under § 502(a). See *Mahon*, 41 F.Supp.2d at 914. However, this court concludes that the second factor is not met because Plaintiff's claim does not fall within the scope of an ERISA provision that Plaintiff can enforce through § 502(a). Plaintiff is not seeking "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." See 29 U.S.C. § 1132(a)(1)(B).

In this case, unlike the situation in *Jass*, Plaintiff does not claim that the ERISA plan is liable for the nurses' denial of benefits, but instead alleges that the ERISA plan is liable for wrongful death based upon the nurses' misdiagnosis of Gary's condition and the nurses' faulty medical advice. This court concludes that

the facts here are more similar to the facts involved in the very recent case of *Phommyvong v. Muniz*, 1999 WL 155714 (N.D.Tex.1999). In *Phommyvong*, the court held that claims that a nurse provided inadequate medical care were not completely preempted by ERISA. *Phommyvong*, 1999 WL 155714, at *3–4.

Moreover, in *Dukes*, the Court found that the plaintiffs' state law claims fell outside § 502(a)(1)(B) because they focused on the "quality" of the medical care received and were not claims that the plan erroneously withheld benefits due. *Dukes*, 57 F.3d at 356–57 (ERISA "simply says nothing about the quality of benefits received"). In this case, Plaintiff's claim focuses on the allegedly faulty medical advice provided by the advisory nurse or nurses which, Plaintiff claims, resulted in the tragic death of her 42–year–old husband. Plaintiff's claim is based upon "quality" of medical care and is not a claim that Defendant erroneously withheld benefits due. See *Fritts v. Khoury*, 933 F.Supp. 668, 671–72 (E.D.Mich.1996) (wrongful death and related claims could not be characterized as claims to recover benefits due under the terms of the plan). Significantly, unlike the situation in *Jass*, Plaintiff could not amend her complaint to seek appropriate relief under § 502(a).

As far as the third relevant factor, the question here is whether Plaintiff's claims that Defendant is liable for the faulty medical advice provided by the advisory nurse or nurses under Illinois law will require construing the ERISA plan, a question of federal law. See *Rice*, 65 F.3d at 645. "Where the plaintiff seeks recovery for breach of a duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption." *Speciale*, 147 F.3d at 615 (citing *Rice*, 65 F.3d at 644).

Cases have indicated that claims based on an ERISA plan's "utilization review" role are completely preempted because such claims cannot be resolved without interpreting the benefits contract. See *Jass*, 88 F.3d at 1489; *Dukes*, 57 F.3d at 360; *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 942 (6th Cir.1995) (utilization review is a means of processing claims and, therefore, falls within the scope of § 502(a)). However, this court concludes that the claims at issue here do not clearly involve "utilization review" and instead are more accurately considered claims based on the "quality" of medical care received and a "medical decision" rather than an administrative decision. See *Dukes*, 57 F.3d at 356–57; *Lancaster*, 958 F.Supp. at 1145 ("to assess the existence of complete preemption, federal courts must determine whether a plaintiff's state claim attacks an administrative decision to deny benefits to a plan participant or a medical decision to deny treatment to a patient"); see also *Huss v. Green Spring Health Services, Inc.*, 1999 WL 225885, at *4–6 (E.D.Pa. 1999) (court found that claims that son was denied treatment based upon inadequate administration of ERISA plan completely preempted, but noted that a claim that son was refused access to treatment based upon poor medical judgment would not be). In *Lancaster*, the court concluded that medical malpractice claims were not completely preempted even though the allegations of the complaint referred to the ERISA plan's "Incentive Program" as the cause for the failure to order necessary diagnostic tests. *Lancaster*, 958 F.Supp. at 1146; cf. *Person v. Physicians Health Plan, Inc.* 20 F.Supp.2d 918, 922–23 (E.D.Va.1998) (claim based upon ERISA Plan's refusal to approve surgical procedure completely preempted).

This court finds that Plaintiff's claim that Defendant is liable for the alleged wrongful conduct of the advisory nurse or nurses does not rest upon the terms of the plan and can be resolved without interpreting an ERISA plan. See *Rice*, 65 F.3d at 646; *Moran*, 1998 WL 325204, at *3, *Lancaster*, 958 F.Supp. at 1146. Accordingly, this court concludes that Defendant has not met its burden to show that removal of Counts I through III of Plaintiff's Com-

plaint based upon complete preemption was proper in this case.

IT IS THEREFORE ORDERED:

(1) Plaintiff's Motion to Amend her Complaint by striking Counts IV through IX of the Complaint (# 6) is GRANTED.

(2) Because this court lacks jurisdiction over Counts I through III of Plaintiff's Complaint, Plaintiff's Motion to Remand the Amended Complaint (# 6) is GRANTED. The case is remanded to the circuit court of Vermilion County.

(3) Because this court lacks jurisdiction over Plaintiff's Amended Complaint, Defendant's Motion to Dismiss (# 3) is DENIED as moot.