**Jean RIVERS, as Personal Representative of Joarvonia Anita Miller, deceased, and as Administratix of the Estate of Joarvonia Anita Miller, deceased, Plaintiff,**

v.

**HEALTH OPTIONS CONNECT, INC., a Florida corporation, f/k/a Principal Health Care of Florida, Defendant.**

**No. 99–8398–CIV.**

United States District Court, S.D. Florida.

Feb. 29, 2000.

David William Boone, Simone R. Siex, Joarvonia Anita Miller, Atlanta, GA, for plaintiff.

Steven Mark Ziegler, Sondra Lee Farber, Andres Gonzalez, Steven M. Ziegler PA, Hollywood, FL, for defendant.

### ORDER ON OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

FERGUSON, District Judge.

The broad question presented by the objections to the Report and Recommendation is whether a wrongful death state action based on the negligent decision of a managed health plan physician-administrator, which rejected a request of the patient's private physician to extend a hospital stay, is completely preempted by the Employee Retirement Income Security

Act of 1974, 29 U.S.C. §§ 1001–1461 (1994)("ERISA"). Although the Eleventh Circuit has not addressed the. question presented there is a considerable body of case law on the question from other jurisdictions. Unfortunately the law seems wanting in consistency. Recent decisions of the United States Supreme Court on preemption analysis, as applied to managed health care plans in other contexts, offer little in the way of clarification.

After an exhaustive examination of the law the Magistrate Judge recommended that the Plaintiff's Motion to Remand the case to the state court be denied and that the Defendant's Motion to Dismiss the action [with prejudice] be granted. The cause is before the Court on the Plaintiff's objections to the Report and Recommendation.

FACTUAL BACKGROUND

There is no dispute with the facts as found by Chief United States Magistrate Judge Lurana S. Snow which are adopted and restated here. They are taken from the complaint and are accepted as true for the purpose of the motion for remand and the motion to dismiss.

This action is brought by Jean Rivers ("Rivers"), the surviving sister and personal representative of Joarvonia Anita Miller ("Miller"). The defendant, Health Options Connect, Inc. ("Health Options") is a managed health care company with whom Miller contracted, through her employer, for medical and hospital benefits. It is alleged in the complaint that on February 13, 1997, Miller was admitted to the emergency room at a Palm Beach County hospital. She was diagnosed as suffering from exacerbation of a chronic obstructive pulmonary disease. Miller remained in the hospital from February 13 through February 18, 1997, being treated with respiratory therapy, intravenous steroids and nebulizers. Her treating physician, Dr. Kevin Gilbert ("Dr. Gilbert"), sought from Health Options' agent authorization for continued hospitalization benefits because of what in his opinion was a serious condition. It is further alleged that on or about February 18, 1997, the Health Options' employee or agent, Dr. Melvyn Mackler ("Dr. Mackler"), reviewed the request for continued hospital benefits and determined that further hospitalization was not medically necessary. By his letter of the same date Dr. Gilbert's request that Miller be given further hospital benefits was denied. Miller was discharged on the evening of February 18, 1997. She died the next morning. The cause of death was acute necrotizing pancreatitis.

STATE CAUSES OF ACTION

In the February 1999 complaint filed in the state court, Rivers states six causes of action. Count I sets forth a claim of negligence against Health Options based on alleged failure to adequately assess and evaluate Miller's medical condition when determining her need for continued hospitalization benefits. Count II is for breach of contract based on the alleged failure of Health Options to provide and authorize coverage for medically necessary hospitalization services. Count III seeks recovery based on a theory that Miller was a third party beneficiary of the contract between Health Options and Mackler. Count IV is a claim of misrepresentation regarding the quality of medical benefits provided by Health Options. Count V is for breach of express warranty, and Count VI alleges breach of Health Options' covenant of good faith and fair dealing. All counts are brought pursuant to the Florida Wrongful Death Act, Fla. Stat. § 768.21.

REMOVAL TO FEDERAL COURT

In May 1999 Health Options removed the action to this court asserting as grounds that: (1) Miller's employer, Data, Inc., paid 100% of the premiums for the medical coverage; (2) the Health Plan in this case is an employee welfare plan governed by ERISA; (3) the claims against Health Connect based on the allegedly wrongful denial of benefits fall within the enforcement provision of ERISA and are completely preempted as a matter of law; and (4) the claims are converted into fed-

eral claims and this cause of action is properly removable to federal court.

In her Motion to Remand Rivers contends that (1) the claims seek to recover for the poor quality of medical service provided to Miller, (2) the claims do not fall within the scope of § 502, ERISA's civil enforcement provision, therefore, (3) the doctrine of complete preemption is not applicable and no federal question jurisdiction exists.

ERISA, MANAGED HEALTH CARE PLANS AND PREEMPTION

ERISA was enacted to protect the well-being and security of millions of employees and their dependents from losses and inequities in the administration of employee benefit plans. 29 U.S.C. § 1001(a)-(c).[1] Congress intended that ERISA "promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll–Rand, Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

ERISA's preemption clause, which "was intended to ensure that plans and plan sponsors would be subject to a uniform body of law," *Id.* at 142, 111 S.Ct. 478, has proven to be instead a source of great uncertainty to the detriment of employees and their dependents. Nevertheless, this recognition of congressional intent was reaffirmed in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 646, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)(basic thrust of the preemption clause is to avoid a multiplicity of regulations in order to permit the nationally uniform administration of employee benefits plans). The preemption clause provides in innocuous language that:

> [T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereinafter relate to any employee benefit plan described in section 1003(a) of this title
> ....

Pub.L. 93–406, Title 1 § 514; 29 U.S.C. § 1144(a)(emphasis added).

In interpreting ERISA's preemption clause the Supreme Court, in earlier opinions, gave an expansive reading to the "relate to" clause holding that it "was designed by Congress to establish pension plan regulation as exclusively a federal concern." *Ingersoll–Rand*, 498 U.S. at 138, 111 S.Ct. 478. By a later ruling in *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the court appears to have withdrawn from the overly expansive interpretation it had previously given to "relate to" for the purpose of finding that ERISA preempted state law. It held instead that "to determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 325, 117 S.Ct. 832, *citing* its earlier opinion in *Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The court undertook to address the substance of the California statute, claimed as preempted, with the presumption that ERISA did not intend to supplant it. *Dillingham*, 519 U.S. at 331, 117 S.Ct. 832.

Expanding on the majority opinion Justice Scalia, in a concurring opinion, observed that the majority opinion was a return to "traditional preemption analysis". He noted that the "relate to" clause of the preemption provision is meant, "not to set forth a test for preemption, but rather to identify the field in which ordinary field pre-emption applies—namely, the field of law regulating employee benefit plans described in section 1003(a) of this title." *Dillingham*, 519 U.S. at 336, 117 S.Ct. 832. "I think, [he concluded] it accurately describes our current ERISA jurisprudence to say that we apply ordinary

---

**1.** It is undisputed by the parties that ERISA applies to Miller's employer sponsored health plan.

field pre-emption, and, of course, ordinary conflict pre-emption." *Dillingham,* 519 U.S. at 336, 117 S.Ct. 832; *see generally Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

Managed health care plans, such as Health Options', are welfare benefit plans which come under ERISA. As noted by one observer they were created as alternatives to fee-for-service plans in order to control staggering medical costs and undertakes to accomplish that goal by eliminating or reducing unnecessary services or reducing the costs of medical items and services. Cynthia Ransburg–Brown, *The Ultimate Jigsaw Puzzle: Erisa Preemption and Liability in the Utilization Review Process,* 28 Cumb. L.Rev. 403 (1997–98). The most common of several cost containment mechanisms used by health maintenance organizations is the utilization review ("UR") process which refers to case-by-case evaluations conducted by the organization or by independent UR contractors who decide whether the medical care requested by the plan beneficiary or her or his treating physician is necessary or appropriate. Reviewers, often physicians, have a financial incentive for rejecting requests for medical or hospital benefits which at least one court has held to create a conflict of interests. · *Herdrich v. Pegram,* 170 F.3d 683 (7th Cir.1999) *cert. granted, Pegram v. Herdrich,* —— U.S. ——, 120 S.Ct.. 10, 144 L.Ed.2d 841 (U.S. Sep. 28, 1999).

It is the position of Health Options, expressed in other words, that where a decision is made to discontinue medical or hospital benefits under an ERISA plan, after a UR by the plan's employee or agent, there is absolute immunity from a state law negligence action because the action would relate to the plan. That is not the law in this Circuit. ˙ Several commentators express concern that if utiliza-

tion review decisions could absolve the decisionmakers from liability there would be increased incentive to control costs with no incentive ·to ·make good medical decisions. *See Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1327, n. 8 (5th Cir.1992). Congress has expressed no desire that ERISA be used to degrade the quality of healthcare. *Edelen v. Osterman,· D.P.M.,* 943 F.Supp. 75, 77 (D.D.C.1996). The suggestion that a plaintiff should be left remediless at the state or federal level for negligent medical care is clearly at odds with the expressed intent of Congress in enacting ERISA—to protect employees and their dependents.

Whether ·ERISA completely preempted a state action claim for negligence on the part of a health maintenance organization in providing medical services was decided in two recent cases. In *Crum v. Health Alliance–Midwest, Inc.,* 47 F.Supp.2d 1013 (C.D.Ill.1999), the court held that wrongful death claims brought by the beneficiary's spouse against the health care plan alleging that nurses for the plan misdiagnosed the beneficiary's condition and gave faulty advice, were not preempted under the ERISA provision which preempts state claims that relate to matters governed by ERISA. In deciding the question whether ERISA preemption applied the court adopted a three-part test.in a traditional analysis which examined whether (1) plaintiff is eligible to. bring the claim under ERISA, (2) plaintiff's cause of action falls within the scope of an ERISA provision that plaintiff can enforce via the ERISA section authorizing civil actions, and (3) plaintiff's state law claims cannot be resolved without an interpretation of a contract governed by federal law. The results of the test were that (1) the defendant is an ERISA plan and the plaintiff, as a beneficiary of the plan, is entitled to bring a claim under. § 502,[2] (2) plaintiff's claim

---

2. ERISA § 502 provides:
 (a) Persons empowered to bring a civil action
 A civil action may be brought—
  (1) by a participant or beneficiary—
  (A) for the relief provided for in subsection
 (c) of this section, or

 (B) to recover benefits due to him under the terms of his plan,·to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; .... Pub.L. 93–406, Title 1 § 502; 29 U.S.C. § 1132.

did not fall within the scope of an ERISA provision that the plaintiff could enforce through § 502, and (3) the plaintiff seeks recovery for breach of a duty imposed by state law and the action does not involve the interpretation of a contract governed by federal law.

The court acknowledged the existence of cases which hold that claims based on an ERISA plan's UR role are completely preempted because such claims cannot be resolved without interpreting the benefits contract. It distinguished the case on the basis that Crum's claims attacked the quality of care received as a medical decision rather than an administrative decision as to contractual entitlement. Having fully examined the complaint this court finds no reference to a utilization review. What is alleged is that Dr. Mackler, Health Options' employee or agent, "reviewed Ms. Miller's clinical information and made a medical decision that further hospitalization was not medically necessary."

Similarly in *In re U.S. Healthcare, Inc.*, 193 F.3d 151 (3d Cir.1999), decided four months after *Crum*, the court drew a distinction between state law claims directed to the quality of benefits provided on the one hand and claims that the plan participant was entitled to, but did not receive a certain quantum of benefits under his or her plan. The first type of claim it held was not preempted by ERISA but that the latter would be completely preempted. Although it may be difficult at times to pigeon-hole claims into one of the two categories, it was not problematic because clearly some of the claims concerned adequacy of care rather than a decision to deny benefits in reliance on an interpretation of the contract.

■ As in *U.S. Healthcare, Inc.* Miller here has artfully pleaded her causes of action and makes no allegations regarding a failure "to provide benefits due under the plan," or that the rejection of the treating physician's request for continued hospitalization was based on an independent utilization review. She was not obligated to do so. Plaintiffs enjoy a right to be free from medical malpractice regardless of whether care is provided through an ERISA plan. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 358 (3d Cir.1995). Under the well-pleaded complaint rule a cause of action "arises under" federal law, and removal is proper, only if a federal question based on complete preemption is presented on the face of the plaintiff's properly pleaded complaint. The narrow exception to the "well-pleaded complaint rule" whereby federal jurisdiction will be found notwithstanding the absence of a federal cause of action on the face of the complaint does not dictate a different outcome because Health Options has not shown, as a matter of law, that Congress intended to completely preempt the area of medical care. *See Crum* 47 F.Supp.2d at 1018 (ERISA does not oblige federal courts to take over the entire subject of medical care.) Whether Health Options can affirmatively show "conflict preemption" pursuant to § 514 is not decided here. Conflict preemption, as distinct from complete preemption, is a federal defense, not a basis for removal, which may be presented in the state court. *U.S. Healthcare, Inc.*, 193 F.3d at 160.

The Plaintiff's Objections to the Report and Recommendation are **SUSTAINED** and accordingly it is

**ORDERED AND ADJUDGED** that the Motion to Remand is **GRANTED.**

This case is closed. All pending motions are rendered moot by this order.