**Donald FAIN, Plaintiff,**

v.

**FSC SECURITIES CORP., David Watercutter, and Watercutter Financial Consultants, Defendants.**

No. 1:00–CV–230.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 30, 2000.

Kathleen M Anderson, Barnes and Thornburg, Fort Wayne, IN, for Donald Fain, plaintiff.

William L. O'Connor, Kightlinger and Gray, Indianapolis, IN, for FSC Securities Corporation, defendant.

## ***ORDER***

WILLIAM C. LEE, Chief Judge.

Currently before the Court is Plaintiff Mr. Donald Fain's Motion to Remand, filed on June 22, 2000. The defendants filed their response on July 11, 2000, to which Mr. Fain replied on July 31, 2000. On August 15, 2000, United States Magistrate Judge Roger Cosbey granted defendant's Motion to File an Additional Response Brief. Defendants filed their additional response brief that same day. Mr. Fain filed an additional reply brief on August 16, 2000. For the following reasons, the Court will GRANT Mr. Fain's Motion to Remand.

## FACTUAL BACKGROUND

Defendant Mr. David Watercutter is an investment advisor doing business as Watercutter Financial Consultants (WFC). Mr. Watercutter provides investment services as an agent of FSC Securities Corporation (FSC). In mid–1999, Hercules Machinery Corporation (Hercules) amended and updated its employee profit-sharing plan, a plan funded solely by employer contributions. According to the plan, only the trustee can choose the investment alternatives for the employees. The employees then choose one or more of these alternatives for their funds. Hercules offered Mr. Watercutter the opportunity to assist its employees by providing investment advice to them with respect to Hercules' profit-sharing plan. Watercutter, WFC, and FSC are not fiduciaries or plan entities with respect to the Hercules' plan, however. Rather, the defendants' only role is that after participants in the Hercules' plan cashed-out their investments in Hercules' prior plan, the participants reinvested that money based upon Watercutter's advice regarding investment options.

Mr. Fain is an owner of Hercules and thus a participant in Hercules' profit-sharing plan. As a participant in the plan, Mr. Fain met with Mr. Watercutter for investment advice, informing Mr. Watercutter of his dissatisfaction with the Hercules' plan and that he wished to re-invest approximately $260,924.36 in a fund with more risk and a higher profit potential. Mr. Watercutter suggested that Mr. Fain research and identify such a fund. A few days later, Mr. Fain informed Mr. Watercutter that he wished to invest in the MFS Emerging Markets Equity Fund–A (MEMAX). Mr. Watercutter agreed to take the steps necessary so that MEMAX could be added to the choice of funds in the Hercules' plan and to transfer Mr. Fain's account balance into MEMAX. According to Mr. Fain, Mr. Watercutter stated that this transfer would occur around August 27, 1999.

On or about January 2, 2000, Mr. Fain discovered that his money had not been transferred into MEMAX. Instead, Mr. Watercutter had invested Mr. Fain's money into the more conservative MFS Global Equity Fund–A (MWEFX). This transfer of funds into MWEFX occurred on September 14, 1999. Defendants characterize this differently, however, asserting that Mr. Fain, a participant in the Hercules' plan, had directed the trustee of the Hercules' plan in writing that his funds be invested in MWEFX on June 21, 1999.

MWEFX had not performed as well as MEMAX. Mr. Fain confronted Mr. Watercutter, at which time Mr. Watercutter assured Mr. Fain that he had taken the

necessary steps for MEMAX to be added to the plan and to place Mr. Fain's account balance into MEMAX. Mr. Watercutter later admitted to Mr. Fain that he had invested Mr. Fain's funds in MWEFX, as opposed to MEMAX.

On January 7, 2000, Mr. Watercutter transferred the funds to MEMAX. In August of 1999, MEMAX shares were selling for $14.26. On January 7, 2000, MEMAX shares were selling at $17.48. According to Mr. Fain, had his funds been transferred in August of 1999, as he had directed, he should have yielded $321,647.39. Further, when Mr. Fain's funds were placed into MWEFX on September 14, 1999, the shares were selling at $22.54. When Mr. Fain's funds were then transferred from MWEFX to MEMAX, the MWEFX shares were selling at $23.01, leaving Mr. Fain with only a marginal net gain.

Mr. Fain filed his complaint in the Allen County Superior Court on May 5, 2000, alleging state common law actions of breach of contract, breach of duty, and negligence actions against defendants. Defendants removed the within cause to this Court on May 23, 2000.

## DISCUSSION

Two very different forms of preemption arise in the ERISA-context (the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001): complete preemption under § 502(a), 29 U.S.C. § 1132(a), and conflict preemption under § 514(a), 29 U.S.C. § 1144(a).[1] On a motion to re-mand, a court must consider whether the state claims that were removed to federal court are properly in federal court. This is a question of subject matter jurisdiction. In the removal context, a court must determine whether a state claim is removable under the doctrine of "complete preemption", an exception to the well-pleaded complaint rule. Determining whether a state claim is nullified by "conflict preemption," which is used as an affirmative defense, is a separate analysis to be done once jurisdiction is established.[2] *Rice v. Panchal,* 65 F.3d 637, 645 (7th Cir.1995); *see also Speciale v. Seybold,* 147 F.3d 612, 615 (7th Cir.1998).

■ A complaint alleging breach of contract, breach of duty, and negligence states a cause of action under the common law of Indiana. Thus, the Court is not convinced that state claims for breach of contract, breach of duty, and negligence present a federal question that would confer subject-matter jurisdiction upon the Court. Only state court actions that originally could have been filed in federal court may be removed by the defendant to federal court. 28 U.S.C. § 1441. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The rule makes the plaintiff master of his or her own claim; he or she may

---

1. Section 502(a) provides:
   A civil action may be brought—
   (1) by a participant or beneficiary—
   (A) for the relief provided for in subsection (c) of this section, or
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
   29 U.S.C. § 1132(a).
   Section 514(a) provides:
   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
   29 U.S.C. § 1144(a).

2. The only issue currently before the Court is whether this Court has jurisdiction. Thus, a discussion of conflict preemption at this juncture would be inappropriate.

avoid federal jurisdiction by exclusive reliance on state law. *Id.* Furthermore, a defendant may not remove a state cause of action to federal court based on the defense of federal preemption. That is, a state cause of action "may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393, 107 S.Ct. at 2430.

■ The exception to the well-pleaded complaint rule is the complete preemption doctrine: where Congress has completely preempted an area of state law, the doctrine permits the "recharacterization" of a plaintiff's state law claim as a federal claim so that removal is proper. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Speciale*, 147 F.3d at 615; *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir.1989).

■ In *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court extended the complete preemption doctrine to ERISA cases, holding that Congress intended "to make all suits that are cognizable under ERISA's civil enforcement provisions federal question suits." *Id.* at 63–64, 107 S.Ct. 1542; *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir.1996). The Seventh Circuit has held that in the ERISA context, complete preemption exists only if the plaintiff's claim falls within the scope of § 502(a) of ERISA, 29 U.S.C. § 1132(a). *Rice*, 65 F.3d at 639–40; *Jass*, 88 F.3d at 1487. By contrast, claims that are preempted by virtue of § 514(a) of ERISA, which provides for preemption of state law claims that "relate to" matters governed by ERISA, cannot be removed to federal court. 29 U.S.C. § 1141(a); *Jass*, 88 F.3d at 1487–88.

Section 502(a) provides that a civil action may be brought by a plan participant or beneficiary to (among other things) "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502 also specifies that a participant or beneficiary may bring a civil action against a plan administrator for the administrator's refusal to supply requested information. 29 U.S.C. § 1132(c). The Seventh Circuit in *Rice* set-out three factors to explore in order to determine whether a claim is within the scope of § 502(a): a court must examine whether the plaintiff is eligible to bring a claim under that section, whether the plaintiff's claim falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a), and whether the plaintiff's claim cannot be resolved without interpreting a contract governed by ERISA. *Rice*, 65 F.3d at 641, 644; *Jass*, 88 F.3d at 1487.

As later explained by the Seventh Circuit in *Jass*,

[t]he question, then, is whether [plaintiff's] claim against [defendant] is "really" based on ERISA, *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir.1992), or in other words whether the claim is best recharacterized as a 502(a) claim. *Taylor*, 481 U.S. at 64, 107 S.Ct. at 1547 (question is whether complaint that raises only state law causes of action is properly recharacterized as an action arising under federal law); *Rice*, 65 F.3d at 641 (the question is whether plaintiff's claim against defendant is within the scope of § 502(a), even though the complaint alleged only state common law contract and tort claims). This question requires use to apply the factors set forth in *Rice*, as listed above. *See supra* at 1488. And in applying these factors, as noted above, we are not limited by the complaint, but may look beyond it to assure ourselves "that the plaintiff has not by 'artfully pleading' sought to defeat defendant's right to a federal forum." *Oglesby*, 752 F.2d at 277–78 (quoting

*Salveson v. Western States Bankcard Assoc.,* 525 F.Supp. 566, 572 (N.D.Cal. 1981)).

*Jass,* 88 F.3d at 1489.

The first issue under *Rice* is whether Mr. Fain is eligible to bring a claim under § 502(a). Quite clearly, as a member of the Hercules' plan, Mr. Fain is eligible to bring a claim under § 502(a).

The second factor the Court examines is whether the plaintiff's claim falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a). In this case, Mr. Fain seeks damages from a non-ERISA fiduciary and § 502(a) does not provide for Mr. Fain's situation. *See* 29 U.S.C. § 1132(a). Mr. Fain makes claims of breach of contract, breach of duty, and negligence against Watercutter, WFC, and FSC, none of whom are fiduciaries or plan entities with respect to the Hercules' plan. Further, Mr. Fain's claims cannot be re-characterized as claims seeking to recover any benefits due to him under the plan, or to enforce his rights under the terms of the plan, or to assert mismanagement on the part of Hercules as the fiduciary administering the plan. Rather, Mr. Fain asserts that Mr. Watercutter, a non-fiduciary, breached the contract, breached his duty of care, and was negligent in his actions as an investment advisor to Mr. Fain. Simply stated, the Court finds nothing in Plaintiff's claims that would place it within the scope of § 502(a).

The third issue to address is whether Mr. Fain's claim cannot be resolved without interpreting the Hercules' plan which is governed by ERISA. In this case, an interpretation of the plan is clearly unnecessary. Whether defendants breached the contract or their duties, or were negligent with regard to Mr. Fain clearly requires no interpretation of the plan because it involves no aspect of the plan.

Defendants cite *Jass* as support for their position that Mr. Fain's complaint is completely preempted. In *Jass,* the plaintiff filed suit in state court against Prudential Health Care Plan (the administrator of her husband's employee benefit plan), a nurse employed by Prudential, and the plaintiff's treating physician for vicarious liability and negligence. *Jass,* 88 F.3d at 1485. The defendants removed her case to federal court. The Seventh Circuit held that plaintiff's state law claims against Prudential and the nurse were within the scope of § 502(a) and therefore completely preempted (giving the district court jurisdiction over those claims). *Id.* at 1489–90. The Seventh Circuit did not deem the plaintiff's claim against the treating physician completely preempted, however. *Id.* at 1488. Important to note, the physician was not employed by Prudential (whereas the nurse was), but rather was considered a "listed" physician whereby if a subscriber went to a "listed physician" then Prudential paid a higher percentage of the medical expenses. *Id.* at 1485. In essence, the plaintiff's claim in *Jass* sought "recovery from an ERISA plan administrator for vicarious liability based on the alleged negligence of a listed physician." *Id.* at 1488. The court concluded that plaintiff's claim against the treating physician was not completely preempted because the doctor was not an ERISA entity and the plaintiff was not seeking relief available under § 502(a). *Id.* at 1488.

While defendants find *Jass* analogous to their position, this Court finds the case analogous to Mr. Fain's position with regard to the Seventh Circuit's treatment of the listed physician. Mr. Fain brings his claims against non-ERISA entities and no interpretation of the Hercules' plan is necessary for resolution of Mr. Fain's case. "Claim brought against a plan administrator for vicarious liability of an actual or apparent agent, while subject to 'conflict preemption' under § 514(a)[3] ..., is not

---

**3.** As explained earlier, this Court will not examine the doctrine of conflict preemption, as this Court's ultimate conclusion will be that it

has no subject matter jurisdiction. As such, it cannot reach the affirmative defense of conflict preemption as the Court's analysis must

subject to the jurisdictional doctrine of 'complete preemption.'" *Id.* Mr. Fain's case is even farther removed from complete preemption than the plaintiff's situation in *Jass* in that Mr. Fain does not allege any claim subject to relief under § 502(a) or requiring interpretation of the Hercules' plan. *Jass* simply does not support defendants' theory that complete preemption applies to Mr. Fain's claims.

The Central District of Illinois dealt with facts analogous to Mr. Fain's case in *Crum v. Health Alliance–Midwest, Inc.*, 47 F.Supp.2d 1013 (C.D.Ill.1999). In *Crum,* the plaintiff sued a nurse for failure to provide adequate medical care. The nurse was a non-ERISA fiduciary, but the medical care was paid for by the ERISA-benefit plan. The court held that the plaintiff's claim against the nurse for failure to meet an appropriate standard of care fell outside the scope of § 502(a): the plaintiff's state law claim focused solely on the quality of care received and was not a claim against the plan itself for erroneously denying benefits due under the plan. *Id.* at 1019–20.

Similarly, Mr. Watercutter assumed a duty as an investment advisor to assist Mr. Fain and take the steps necessary to add MEMAX to the fund and reassign Mr. Fain's money into MEMAX. In essence, Mr. Fain's claims allege that Mr. Watercutter failed to meet a standard of care. Further, Mr. Fain makes no claim that he was denied him benefit due to him under the plan. Like *Crum,* this Court likewise finds that Mr. Fain's claims do not fall within the scope of § 502(a). The Court therefore will grant Plaintiff's Motion to Remand.

As a final matter, Plaintiff seeks payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal. *See* 28 U.S.C. § 1447(c). The amended version of § 1447(c) unambiguously allows for the award of attorneys' fees and costs: "An order remanding the case may require payment of just costs and any actual expenses, including attor-

end upon its determination that it lacks sub-

ney fees, incurred as a result of the removal." *Id.* The awarding court need not find either good or bad faith for its denial or awarding of costs; the decision is left to the sole discretion of the district court. *Tenner v. Zurek,* 168 F.3d 328, 330 (7th Cir.1999) (quoting *Moore v. Permanente Med. Group, Inc.,* 981 F.2d 443, 447 (9th Cir.1992)).

Within its discretion, the Court will deny Plaintiff's requests for costs and actual expenses incurred as a result of removal. As noted by the Seventh Circuit, complete preemption "presents difficult and technical issues." *Jass,* 88 F.3d at 1486. Further, even though not required, the Court does not find evidence of bad faith or intentional delay on the part of defendants in their removal of the within cause to this Court. As a result, the Court will deny Plaintiff's request for fees under 28 U.S.C. § 1447(c).

### CONCLUSION

For the foregoing reasons, the Court will GRANT Plaintiff's Motion to Remand, filed on June 22, 2000. The Court DENIES Plaintiff's request for costs and actual expenses, including attorney fees.

ject matter jurisdiction. *See supra* footnote 2.